## Sanker, Appellant, *v.* Pennsylvania Railroad Company.

*Railroads—Workmen in tunnel—Obvious danger—Negligence.*

The repairing of railroad tracks in or near a tunnel is obviously dangerous when the tracks are in service, and the employee working thereon is bound to take notice of the danger and assumes all such risks arising from his employment as he might have known were incident thereto.

*Negligence—Railroads—Tunnel gang—Operation of trains in tunnel.*

In an action to recover for the death of an employee of a railroad company it appeared that the deceased, who was one of the gang employed at work in a tunnel in which there were two railroad tracks, had received

notice before going into the tunnel that the tracks were clear and the trains would be run as usual on both tracks. The workmen had been notified earlier in the day that there would be no single track movement (i. e., that trains would not run in both directions) on the south track. The usual way for the railroad company to operate its road was to run its trains when its exigencies required it for short distances both ways on each of the tracks. Ample space was provided where workmen could escape injury from passing trains on either track. When in or near the tunnel, it was impossible to tell on which track a train was coming except from the direction in which it entered the tunnel, ordinarily west-bound trains passing through on the north track and east-bound trains on the south track. A train entered the tunnel going west and the deceased, with others, stepped on the south track to avoid it. The train instead of being on the north track was on the south track, and striking the deceased inflicted injuries from which he died. *Held,* that the notice to the employees that the trains would be run as usual on both tracks was notice that trains might come on either track in both directions, and that the deceased was guilty of contributory negligence.

*Practice—Rules of Supreme court—Paper-books—Opinion of court below on motion for new trial.*

Rule 19 of the Supreme Court, as amended, requires that the paper-book of the appellant shall contain the opinion of the court below filed in the case. Failure to print the opinion of the court below on a motion for a new trial will result in the Supreme Court quashing the writ of its own motion.

Argued April 20, 1903. Appeal, No. 128, Jan. T., 1902, by plaintiff, from judgment of C. P. Huntingdon Co., Dec. T., 1899, No. 34, on verdict for defendant in case of Jennie A. Sanker v. Pennsylvania Railroad Company. Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Trespass to recover damages for personal injuries.

The court below, BAILY, P. J., gave binding instructions for the defendant in the following charge:

Gentlemen of the jury: On January 29, 1899, Thomas W. Sanker, the plaintiff's husband, being then in the employ of the defendant company as a track repairman, with a number of other employees, was engaged in putting new rails in the northern railroad track of the Gallitzin tunnel, in Cambria county. Traffic over that track was wholly suspended until the work of laying the new rails was completed. The northern track is what is called the west-bound track; the trains westward bound

usually use that track. The other, or what is called the southern or east-bound track, was not disturbed during the progress of the work on the northern track.

It appears that the work of replacing the old rails with new ones on that track was practically completed and the connection made a few minutes before two o'clock in the afternoon of that day, and that track was then put into service. Therefore at that time both tracks in the tunnel were ready for service the same as before the work of renewing the northern track had commenced. Neither the plaintiff's husband nor any of the other of the employees was injured in the tunnel while in the performance of that work.

When the connection was made and that track ready for service, the employees, including Sanker, went to the tool house, a short distance west of the tunnel, and got their dinners. It appears that some additional bolts were required in the rail splices; and, after the employees had their dinners, they, or at least many of those who had been at work in the forenoon, including Sanker, were ordered to go to the tunnel and put in these bolts.

When they got near to the mouth of the tunnel, a freight train had just passed through, going westward, on the track which had been renewed before the men went to their dinners. A heavy cloud of smoke was about the mouth of the tunnel when the employees reached it, and they were directed by the foreman not to enter the tunnel until the smoke would clear away. While they were waiting to enter, another train was heard coming through the tunnel, also going westward. Probably believing this train was on the northern or west-bound track, many of the employees, for the purpose of avoiding being struck by it, congregated on the southern or east-bound track. Unfortunately for them the train was running on that track; and, probably on account of the density of the smoke hanging around the mouth of the tunnel, they could not or did not see that it was on the track on which they were standing, until it struck among them, injuring quite a number, among them the plaintiff's husband, who died the same day in the Altoona Hospital from the injuries he sustained.

His widow, this plaintiff, brings this action to recover damages she has sustained by reason of the death of her husband.

The principal question which arises in this case is, whether the railroad company was guilty of negligence in running this train, which was composed of three locomotives and three cabin cars, westward on the east-bound track.

In considering this question as a question of law, we must and do assume the truth of the plaintiff's testimony. The facts as I have related them prominently appear in it.

It also appears that the employees knew, when they went to the mouth of the tunnel after dinner, that both tracks were in service. They were so informed at the tool house before they started for the tunnel. They heard the rumble of the approaching train in the tunnel; they saw the smoky condition of the atmosphere at the mouth of the tunnel, which prevented them from seeing into it and ascertaining upon which track the train was running. Unfortunately they assumed it was on the west-bound track, while in fact it was on the east-bound track. They were not told it was on the west-bound track, but seem to have taken that for granted.

Both tracks being in service, the railroad company had a right to run its trains upon them as frequently as, and in whatever direction, it saw fit. The plaintiff's husband, when he entered into the employment of the railroad company, assumed the risk of all dangers incident to his employment, however they may arise, against which he may protect himself by the exercise of ordinary care.

On account of renewing the rails of the northern track in the tunnel, it appears that a number of freight trains were halted east of the tunnel, which blocked the approach to it on that track. The train which had passed around this blockade of cars and which struck the employees was desired to be hurried to its destination to relieve a blockade at a point west of the tunnel. We cannot see upon what principle it can be held for negligence in running a train around this blockade of its freight trains, that it might speedily reach its destination to perform the duties to which the locomotives and cabins which composed it were assigned.

The mouth of the tunnel was clouded with smoke, so that these employees could not see upon which track this train was running, the ringing of the bell of the locomotive and the lights upon it could neither be heard nor seen by them; they should,

therefore, have been more cautious to ascertain upon which track it was running, before voluntarily placing themselves upon either track. There was a place of safety for them alongside of the track, which is called in the testimony the " ditch."

As the railroad company had a right to use its tracks in such a way as it thought best to conduct its traffic, the sad mistake of these employees to assume that this train would run on a particular track is not to be imputed to negligence on the part of the company. It did not either expressly or by implication advise them to be at the place they were at the time they received their injuries.

There is no evidence that the company or those in charge of the train knew or had reason to believe that these employees were upon the south track. Their duty did not call them to be there. There is some evidence that Ehrenfeld, the supervisor of the defendant company, and in charge of the maintenance of the tracks through the tunnel, told the employees that there would be no single track movement of the trains in the tunnel while the employees were at work; there is no evidence that there was any such movement of the trains when the employees were in the tunnel, or until after both tracks were ready for service and the employees had notice of it.

While we sympathize with this plaintiff and the employees who were injured upon that unfortunate afternoon, I cannot declare the law different from what I understand it to be. I have put myself clearly upon the record ; and, if I have erred I have the satisfaction of knowing that my judgment can be reviewed by a higher court and corrected if I am mistaken.

It is your duty to render a verdict in favor of the defendant.

The court subsequently on a motion for a new trial filed the following opinion :

There was no dispute about any material facts in this case. The question whether they were sufficient to convict the defendant of negligence was for the court. The cases are numerous that upon an undisputed state of facts it is the province of the court to pass upon the question of the defendant's negligence : Koons v. Western Union Telegraph Co., 102 Pa. 164; Hoag v. Lake Shore, etc., R. R. Co., 85 Pa. 293; Cougle v. McKee et al., 151 Pa. 602.

The notice given to the plaintiff's husband and the other employees, at the tool house, before they returned to the tunnel, after dinner, that the tracks were clear and trains would be run as usual on both tracks was a countermand of the notice given them earlier in the day that there would be no single track movement on the south track. After giving this notice the defendant owed these employees the same and no greater, duty, it did, as if the first notice had not been given. The defendant reassumed its right to run its trains on both tracks as it saw fit and it was the duty of the trackmen to keep out of their way. There was no necessity for them to be on the south track. Ample space was provided, where they could have escaped injury from passing trains on either track. That they chose to seek safety on the south track was no fault of the defendant.

It is well known that the " usual " way the defendant operates its road is to use all its tracks in such manner as the exigencies or circumstances may require and that it is not unusual for it to run for a short distance west-bound trains on the track ordinarily used for east-bound trains and vice versa.

That the repairing of railroad tracks in or near a tunnel is obviously dangerous when the tracks are in service cannot admit of any doubt or question. The danger is so patent that the employee is bound to take notice of it : Devlin v. Phœnix Iron Co., 182 Pa. 109. A servant assumes all such risks arising from his employment as he might have known were reasonably incident thereto, and he cannot recover against the master for injuries arising from such patent risks : Schall v. Cole, 107 Pa. 1.

A track repairer assumes the risk incident to trains passing to and fro at the point of his employment : Palko v. Central R. R. Co. of N. J., 9 Kulp, 550.

Neither duty nor necessity required the plaintiff's husband to be on either track at the time of the accident. He voluntarily chose to be on the south track, evidently for the purpose of avoiding a passing train which he believed was approaching on the north track. This proved to be an error of judgment on his part. For this the defendant was not liable. It was not guilty of negligence in running its trains as it saw fit on its own tracks after it had given notice to Mr. Sanker and the

other employees who had been at work in the tunnel that day that both tracks were clear and that trains would be run on both as usual.

For these reasons the motion for new trial must be overruled.

*Error assigned* among others was in giving binding instructions for the defendant.

*E. H. Flick*, with him *H. C. Madden*, for appellant.—The master owes to every employee the duty of providing a reasonably safe place in which to work, and reasonably safe tools, instruments and machinery with which to work. It is the duty of a railroad company to frame and promulgate such rules and schedules for the moving of trains as will afford reasonable safety to its operatives : Lewis v. Seifert, 116 Pa. 628.

That which is due care and ordinary diligence will much depend upon the kind of business which is carried on. The proprietor of a powder mill must exercise more precaution than the master of a blacksmith shop : Ardesco Oil Co. v. Gilson, 63 Pa. 146 ; Patterson v. Pittsburg, etc., R. R. Co., 76 Pa. 389 ; Kehler v. Schwenk, 151 Pa. 505.

*J. D. Dorris*, of *W. & J. D. Dorris*, for appellee, cited : Weger v. Penna. R. R. Co., 55 Pa. 460 ; Nye v. Penna. R. R. Co., 178 Pa. 134 ; Dell v. Phillips Glass Co., 169 Pa. 549 ; Young v. Omnibus Co., 180 Pa. 75.

PER CURIAM, May 4, 1903 :

Under the uncontradicted evidence in this case, the plaintiff's husband was guilty of contributory negligence. This does not appear solely from the evidence of defendant, but her own case discloses it as so clearly shown from the opinion of the learned judge of the court below on the motion for a new trial.

We discover on a glance at the record copied in the paper-book, that on October 14, 1901, the opinion on the motion for a new trial was filed in the court below ; this was not printed, but by going to the record in the office of the prothonotary we discover it. The neglect to print is a flagrant violation of the rules of this court ; it is a most important paper bearing directly on the issue and the assignments of error and if a mo-

tion to quash for this reason had been made by appellee's counsel, it would have been sustained at bar; but from a neglect to make such motion, equaled only by appellant's neglect to print the opinion, we permitted the argument on the merits to proceed. Hereafter, for such palpable disregard of rules, we will of our own motion quash the writ.